W. W. JENNE, PLAINTIFF IN ERROR, V. P. M. GILBERT,
DEFENDANT IN ERROR.

[FILED MAY 16, 1889.]

1. **Trial**: EVIDENCE: QUESTION FOR JURY. J. being possessed of
   a stock of goods in Falls City, exchanged the same for the opera
   house in that place. The exchange took place March 22, 1886,
   to date from March 1 of that year. The receipts from sales of
   goods from March 1 to the time of exchange, were $1,056,
   which the defendant testified he was to retain. *Held*, That this
   testimony should have been submitted to the jury, and that an
   instruction in effect withdrawing it from them was erroneous.

2. **Fraudulent Representations.** Instruction set out in the rec-
   ord does not fairly present the question of alleged fraudulent
   representations as to the value of certain goods.

ERROR to the district court for Richardson county.
Tried below before APPELGET, J.

*Isham Reavis,* and *A. E. Gantt,* for plaintiff in error,
cited: *First National Bank v. Yocum,* 11 Neb. 328;
*Slaughter's Administrator v. Gerson,* 13 Wall. 379; *Lord
& Jenness v. Goddard,* 13 How. 198; *Taylor v. Leith,* 26
Ohio St. 428; *Veasey v. Doton,* 3 Allen, (Mass.,) 380; Ben-
jamin on Sales, vol. 1, sec. 641.

*E. W. Thomas, Frank Martin,* and *C. Gillespie,* for de-
fendant in error, cited: *Phillips v. Jones,* 12 Neb. 213;
Benjamin on Sales, 560, note; *Jackson v. Collins,* 39 Mich.
557; 561; 3 Wait's Act. & Def. 431, 432; *Dillman v.
Nadlehoffer,* 7 N. E. Rep. (Ill.) 88, and note citing many
cases.

MAXWELL, J.

The defendant in error brought an action against the
plaintiff in error, in the district court of Richardson county,

and on the trial recovered a verdict for $2,157, upon which judgment was rendered.

For causes of action, the defendant in error (plaintiff below) alleges in his petition that "On the twenty-second day of March, 1886, plaintiff and defendant entered into a certain contract whereby plaintiff traded and conveyed to said defendant the opera house situated in Falls City, Nebraska, in exchange for a certain stock of goods then owned and possessed by defendant in said city, with the understanding and agreement and upon the condition that said contract and exchange should be considered as made, and should take effect, as of the first day of March, 1886 ; and that defendant should have the earnings and receipts from the opera house from said first day of March ; and that plaintiff should have the earnings and receipts arising from sales made from said stock of goods from the first to the twenty-second days of March, 1886 ; and that defendant should pay to plaintiff the amount of such receipts which had come into his hands. The defendant did accordingly receive the earnings and receipts of the opera house from March first; but, disregarding his contract and agreement, having received and got into his possession the earnings and receipts arising from sales from said stock of goods from the first to the twenty-second days of March, 1886, amounting to the sum of one thousand and fifty-six dollars, he has wrongfully retained and appropriated the same to his own use; and although the plaintiff has demanded the same from him, he has refused and still refuses to pay the same or any part thereof to the plaintiff.

"2. When said contract was made between plaintiff and defendant, on March 22, 1886, as above set out, for the purpose of inducing plaintiff to enter into the same, and to convey said defendant the said opera house, as aforesaid, the defendant falsely and fraudulently represented to plaintiff that his said stock of goods was worth $8,500, and would invoice nearer $9,000 than $8,000; that plaintiff

had no knowledge of the value of said stock, as defendant well knew, and plaintiff relied upon said representation, and made said contract on the faith and credit thereof; that by said representation, plaintiff was induced to give said opera house in exchange for said stock; the said opera house was worth at least $9,000, and the plaintiff had only a short time before, bought the same at that price; that the said stock of goods was really worth not more than $3,500, as defendant then well knew; that said stock of goods would not have invoiced $3,800; all of which facts were then and there well known to defendant, and the same were made for the purpose of inducing said plaintiff to make said trade, knowing that plaintiff would not enter said contract had he not believed said representations to be true. By said false representations, defendant defrauded plaintiff of the difference between the alleged value of said stock and its actual value, to wit, in the sum of $4,700."

The plaintiff in error in his answer "Admits that he entered into a certain contract with plaintiff herein (defendant in error) on or about the 22d day of March, 1886, whereby the plaintiff in error (defendant below) traded a certain stock of goods to said plaintiff (defendant in error) for a certain building and ground in the city of Falls City, Richardson county, Nebraska, which building is known as the opera house; but defendant denies that the terms of the contract are as stated by plaintiff. Defendant avers the facts to be that during the months of January, February, and March, 1886, defendant was engaged in the general mercantile business in the city of Falls City, in company with Mrs. Emma Wicks, under the firm name and style of W. W. Jenne & Co.; that during the same time, said plaintiff was in said city in possession of a small remnant stock of general merchandise, which plaintiff had purchased from Watts & Aynes; that the said plaintiff was indebted on said remnant stock to the amount of $1,600, and that at the request of said plaintiff, defendant went on a note with

said plaintiff for the sum of $1,275, at the Richardson County Bank; that the plaintiff made frequent and numerous overtures to this defendant for a trade, and that finally defendant made a memorandum in writing as to what this defendant would do in regard to said trade; that the following is a copy of said memorandum: 'I will give you the W. W. Jenne & Co. stock as it was before the time of taking in the Watts & Aynes stock, for the opera house, and I will pay all bills up to March 1 and have all moneys taken in since. I will also pay bills $275 out of money taken in since; the balance seven hundred and eighty-one dollars, you can pay me, so I can turn it over to Mrs. Wicks. I will also let you have the delivery wagon free, and I pay Mrs. Wicks her share of the interest in said firm; and I will work for you at $75 per month for a year, unless I should sell the opera house in the mean time; then I would want to join you equally in the business. I will be the general manager of the business, and perform the duty to the best of my ability.

"'W. W. JENNE.

"'You have all the signs and signboards free, and everything pertaining to the signs;' that said plaintiff at once accepted said proposition, and said trade was accordingly made, and said plaintiff entered into a written contract with defendant engaging the services of defendant for one year. A copy of said contract is as follows: 'The contract made and entered into by and between P. M. Gilbert, of the first part, and W. W. Jenne, of the second part, all of Falls City, Nebraska. Party of the first part engages W. W. Jenne, party of the second part, to take charge and manage his business, consisting of the Banner Store stock — do the buying, paying bills, and managing business generally; and for said services, I, P. M. Gilbert, am to pay said Jenne $900 for one year's services, commencing March 1, 1886. Said Jenne is not allowed to draw over $75 per month on above amount. Said Jenne agrees to perform

his duty to the best of his ability, and use all his influence and experience in promoting the interest of said business. Signed this date.

"*March 1, 1886.*                    P. M. GILBERT.
                              "'W. W. JENNE.'.

"This defendant denies ever making any false or fraudulent representations to said plaintiff concerning the value of the W. W. Jenne & Co. stock of goods, or in relation to any other matter, but avers that he believes that on the 1st of March, 1886, that the said W. W. Jenne & Co. stock would invoice $8,000; that a partial invoice of said stock had been taken in February, 1886, and that defendant's belief is taken from that partial invoice, and his general knowledge of the business; that no complete invoice of stock was taken when said stock was traded to said plaintiff, nor was said stock completely invoiced until the first of February, 1887; that all of said stock and property was open and subject to the inspection of said plaintiff prior to and at the time he traded for the same, and was examined and inspected by him before he traded for the same; and defendant denies that he in any way misled said plaintiff, or that plaintiff relied upon any representations made by defendant." Other facts are pleaded in the answer which need not be referred to here.

There is testimony tending to sustain the allegations of the petition, and also of the answer.

1. The court instructed the jury that "If the jury find from the evidence that on or about March 22, 1886, plaintiff and defendant entered into a contract whereby it was agreed that the plaintiff should give his opera house in exchange for defendant's stock of goods, and that said contract should take effect as of the 1st day of March, 1886, and if you further find that said opera house was accordingly conveyed by plaintiff to defendant, and said stock of goods transferred to plaintiff, then all the profits and proceeds arising from said stock of goods from and after the 1st

day of March, 1886, belong to the plaintiff; and if you find from the evidence that the defendant has kept and appropriated any part of the same, you should find for the plaintiff and assess his damages at the amount so appropriated, with interest at seven per cent from the time the same should have been paid over."

The testimony of the plaintiff in error is, that he was to have the proceeds of the sales from the 1st to the 22d of March, 1886. His testimony was entirely withdrawn from the jury by the instruction above given. In this we think the court erred. The case as made by the evidence must be submitted to the jury, and if the court withdraws material testimony from their consideration, it will be ground for the reversal of the case.

2. The court also instructed the jury that "If you find from the evidence that the defendant, for the purpose of inducing plaintiff to exchange his opera house for the Jenne stock of goods, made false and fraudulent representations as to the value of said stock, and as to what said stock would invoice, then, if you find that both of said parties had equal means of information, and were equally well qualified to judge of the value of said stock, then plaintiff cannot recover therefor.

"But if you find from the evidence that the defendant had better means of information on the subject of such representations, and was better qualified to judge thereof, and that plaintiff believed, and relied on such representations and made the trade on the credit thereof, then the defendant is responsible for the truth of such representations; and if you find that such representations were false, and fraudulently made, and that plaintiff was damaged thereby, you should find for plaintiff."

The testimony tends to show that after the defendant in error took possession of the stock of goods in question, the plaintiff in error remained in his employment as chief clerk and business manager for about eleven months; that

during that time a son of the defendant in error acted as clerk and bookkeeper, and other members of the family of the defendant in error assisted in carrying on the store. During all this time no complaint was made against the plaintiff in error, nor that the defendant in error had not obtained all the goods that he bargained for. At the expiration of about eleven months, the plaintiff in error purchased an interest in the business and became partner with the defendant in error. There is some testimony as to the cause of the difficulty, which, as there must be a new trial, we do not care to repeat; but it was the duty of the court to submit this testimony to the jury in connection with the alleged fraudulent representations. The court also should have stated the difference between representations of actual value and mere expressions of opinion. The defendant in error had made a number of fruitless efforts to trade the opera house in question for goods prior to effecting the exchange in this case. And this, if we may judge from the testimony, he regarded as the best offer which he had received. The instruction in question does not submit the evidence fairly to the jury, and fails to state the law correctly.

The judgment of the district court is reversed, and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other Judges concur.